LOUISE MARIE LECHAT FRENCH *vs.* BOSTON SAFE DEPOSIT AND TRUST COMPANY, executor.

Suffolk.    December 14, 15, 1932. — April 21, 1933.

Present: CROSBY, WAIT, FIELD, DONAHUE, & LUMMUS, JJ.

*Contract*, Construction, Performance and breach, Termination.

A widower seventy-two years of age and a married woman thirty-six years of age made a contract in writing which recited that the man had lost one of his five children and "is desirous of having . . . [the woman] become a member of his household and a companion to him and in so far as possible take the place of such child in . . . [his] heart and life," and provided that the woman should become a member of his household, "conducting herself as a dutiful and loving daughter toward . . . [him], becoming a companion to . . . [him], nursing, caring for and otherwise giving to . . . [him] the loving care of a daughter"; and that the man should support the woman as his daughter and leave to her by will one fifth of all his estate. At the same time he made a codicil to his will giving to her that portion of his estate. A few days later, to the knowledge of the woman, an interlocutory decree of divorce was entered against her in proceedings by her husband, the decree not to be absolute until one year thereafter. Three days after the entry of such decree, the widower and the woman went through a ceremony of marriage and lived together for over a month as husband and wife, when they separated, he dying a few months later. In contemplation of such marriage and with her knowledge and consent, he had revoked his prior will and codicil and had made a will giving her a life interest in one half of his estate. After separating from her he had republished still another will giving all his property to his children, and she had applied for alimony. After his death she made claims as his widow. In a subsequent action by her against the executor of his will for breach of the contract, it was *held*, that

(1) The purpose of the contract was to establish the relationship of father and daughter between the testator and the plaintiff; and the concurrent obligations of the parties under the contract would exist only so long as such relationship should exist;

(2) The voluntary entry by the testator and the plaintiff into marital relations, even though they were unlawful, was inconsistent with the relationship of father and daughter, made performance of the contract impossible and constituted a mutual termination thereof as a matter of law;

(3) The action could not be maintained.

CONTRACT.   Writ dated April 26, 1927.

The action was tried in the Superior Court before *Pinanski*, J.   Material evidence is stated in the opinion.   The judge denied a motion by the defendant that a verdict be ordered in its favor.   The jury, after answering certain special questions submitted to them as described in the opinion, found for the plaintiff in the total sum of $72,322.45. The judge reported the action for determination by this court.

*A. A. Schaefer*, (*C. R. Clapp* with him,) for the defendant.

*R. Gallagher*, (*S. Abrams & E. T. Doherty* with him,) for the plaintiff.

CROSBY, J.   This is an action on a written contract, dated September 21, 1925, between the plaintiff and the defendant's testator, Richard Sprague Stearns.   The declaration is in two counts, the first for alleged breach of that part of the contract which provides for the support of the plaintiff and the payment of certain other expenses.   The second is for damages for the failure of the defendant's testator to devise and bequeath to the plaintiff an undivided one-fifth interest of all his property and estate.

At the time the contract was entered into the testator was seventy-two years old.   His wife had died.   He had four adult children living.   The plaintiff, a native of France, was thirty-six years old when the contract was entered into.   She had been married in France to one Maurice Duran and divorced there at some time before 1914.   On August 27, 1919, she was married in this country to one Samuel French, a captain in the United States Army, and they went to Coronado, California, where they lived together until late in 1924.   In August, 1925, the testator, who had been in poor health for several years and had gone to Coronado for his health, was living in a hotel

there.   He met the plaintiff at this hotel, and about September 6, 1925, went to her house to live.   At some time before this she had learned that the testator had lost a son, William Stearns, in France during the war, and she told him that she knew this son and had visited him at various places in France where he was stationed.   In a letter written by her to one Beckett, dated November 6, 1925, she stated she would have married the son if he had not been killed.   In answer to interrogatories propounded to her she was unable to state when she met William Stearns except that it was some time during the Great War between 1914 and 1918.   There was evidence offered by the defendant tending to show that the plaintiff never saw the testator's son William, and that her testimony regarding him was false in every respect.   On September 16, 1925, French began divorce proceedings against her.

The contract upon which the plaintiff seeks to recover was drawn by the plaintiff's attorney at San Diego, California.   On the same day the testator executed a codicil to his will, drawn by the same attorney, giving her a one-fifth part of his estate.   On the following day the plaintiff made oath to her answer to a divorce petition filed by her husband. After the contract and codicil had been executed the plaintiff and the testator went to Houston, Texas, arriving there about September 25, and stayed at a hotel.   On September 29 the divorce case was heard and an interlocutory judgment was entered in which the court found that all the allegations contained in the complaint were true and that a divorce should be granted as prayed for in the complaint.   It decreed that when one year should have expired after the entry of the interlocutory judgment a final judgment should be entered granting a divorce.   The interval of one year was required by a statute of California.   The plaintiff testified that she heard the divorce had been granted by a telegram sent her by her attorney while she was on the train with the testator on their way to Houston; that she afterwards received a letter from her attorney to the same effect; that a few days after arriving in Houston at the testator's request she called in Clarence A. Teagle, a lawyer in Houston,

and a will was drawn by him and executed by the testator; by its terms one half of the total net income of his estate was given to Mrs. French for her life, the other one half of the net income was to be divided equally among his four children.   Upon Mrs. French's death the remainder was to be divided among his children.   This lawyer was asked to advise them whether they might legally marry.   In his deposition Teagle states that he saw them on the next day and delivered to them a written opinion; that he discussed the matter with them and told them that they could not marry until one year after the interlocutory decree had been entered.   Mrs. French testified that the testator told her that the lawyer said they could be married in any State except California, and she thereupon consented to marry him.   At the trial the plaintiff's counsel expressly disclaimed that any fraud was practised upon her by the testator.   On October 2, 1925, the will was made and the parties went through the form of a marriage; and on October 12 they sailed on a French steamer from Galveston for France.   The plaintiff admitted that she gave her name to the authorities in Houston as Miss Louise Lechat French and said she did it because in France after a decree is granted "you have the right to take the name you had before marriage and can be called 'Miss.'"   She admitted that after her marriage in Houston she "went along with Mr. Stearns as his wife."   The parties admit and the judge ruled that the marriage in Houston was illegal.   The testator was examined in Paris by physicians who advised him to go to the American Hospital, and on November 11 he was moved from the hospital to a sanatorium.   Thereafter, while in Paris and before returning to this country, he revoked the codicil made in San Diego and the will executed in Houston.   On December 7, 1925, the testator executed a codicil republishing an earlier will made in 1922, which gave all his property to his children.   In April, 1926, he was placed under guardianship, and on May 13, 1926, he died at the Massachusetts General Hospital, in Boston.

At the conclusion of the evidence the defendant presented a motion for a directed verdict which was denied

subject to the defendant's exception. The jury were directed to answer the following specific questions: 1. At the time of the execution of the written contract of September 21, 1925, was the defendant's testator of sufficient mind and understanding to make the same? 2. Was the execution of the written contract of September 21, 1925, obtained by the fraud of the plaintiff? 3. Was the written contract of September 21, 1925, mutually abandoned by the plaintiff and the defendant's testator? 4. Was the written contract of September 21, 1925, breached by words or conduct of the plaintiff on or about October 2, 1925? 5. Was the written contract of September 21, 1925, breached by words or conduct of the plaintiff after October 2, 1925, and on or before November 8, 1925? The first question was answered in the affirmative, and all the others were answered in the negative. The defendant also at the conclusion of the evidence presented certain requests for rulings which were denied subject to the defendant's exceptions. These requests were in part as follows: "6. If you find that the plaintiff did not at all times between September 21, 1925, and November 8, 1925, conduct herself with the defendant's testator, Stearns, as a dutiful and loving daughter, she cannot recover in this action. 7. If you find that the conduct of the plaintiff towards the defendant's testator, prior to November 8, 1925, and subsequent to the alleged agreement of September 21, 1925, ceased to be that of a dutiful and loving daughter, then the defendant's testator was, as a matter of law, excused from further performance of the agreement and your verdict must be for the defendant." The defendant excepted to parts of the judge's charge. The jury returned a verdict for the plaintiff upon the first count of the declaration in the sum of $1,800 and upon the second count in the sum of $70,522.45. The trial judge reported the case to this court upon a stipulation which contained among other recitals the following: "If upon all the evidence . . . the court should have directed a verdict for the defendant, then judgment is to be entered for the defendant." All the evidence is reported together with the charge to the jury.

The amended declaration recites that on or about November 8, 1925, the defendant's testator violated the terms of the contract. Neither by the declaration as amended nor in the evidence is it contended by the plaintiff that the testator failed to perform his obligations under the agreement before November 8, 1925, on which date his son Richard came to the hotel in Paris, where the testator and the plaintiff were staying, and took him away. In order to determine whether the parties to the agreement dated and executed September 21, 1925, fully performed their respective obligations under it, or were excused therefrom, it is necessary to determine what those obligations were.

Before the agreement was entered into by the parties a lawyer had been consulted; on being informed by them what they desired to accomplish, he drew the agreement, read it to them, and, after discussion of its provisions, it was executed. At the outset it recites that the defendant's testator was "of the age of seventy-two years, a widower and has lost one of his five children by death and is desirous of having the second party [the plaintiff] become a member of his household and a companion to him and in so far as possible take the place of such child in the heart and life of said first party [the defendant]"; that "the second party has because of marital difficulties separated from her husband and an action to terminate the marriage relations between the second party and her said husband has been brought by such husband and is now pending." It is further recited that "in consideration of the second party during the balance of the term of the natural life of said first party, accompanying said first party and becoming a member of his household, conducting herself as a dutiful and loving daughter toward the first party, becoming a companion to first party, nursing, caring for and otherwise giving to first party the loving care of a daughter, all of which services and acts the second party hereby agrees to do and perform during the whole of such time, the said first party hereby agrees to keep and provide for said second party in a manner worthy of his daughter and in that behalf to pay all of her clothing, living, traveling and other expenses," including other expenses therein specifi-

cally referred to, and upon the death of the first party "to give, devise and bequeath to second party . . . one-fifth interest of all of the property and estate of said first party, real, personal, and mixed and wheresoever situated." The character of the services to be rendered by the plaintiff under the contract as set forth therein is as follows: "It is hereby mutually agreed that the services which the said second party is to perform hereunder are such as cannot be measured by pecuniary standards and that the essence of the said agreement of second party to perform said service is the agreement of said first party to give, devise and bequeath to her such one-fifth interest in and to his property and for the purpose of carrying out this provision the said first party has . . . executed a codicil to his will making such gift bequest and devises . . . and hereby agrees not to revoke such codicil . . . ."

It is manifest from the agreement that the purpose which the parties sought to establish was the relationship of father and child, the plaintiff on her part agreeing to conduct herself as a "dutiful and loving daughter" and to give to the defendant's testator "the loving care of a daughter" during the remainder of the term of his natural life, in return for which the defendant's testator agreed during his lifetime to keep and provide for the plaintiff in a manner worthy of his daughter, and upon his death to give to her an undivided one fifth of his entire estate, she thereby receiving the same share therein as she would receive were she his daughter by birth and he had died intestate. The obligations so incurred were interdependent and concurrent. The obligation of the plaintiff to maintain the relationship of a daughter to the testator, to conduct herself as a dutiful daughter, and to give him the care of a daughter was to continue only so long as he provided for her in a manner worthy of his daughter. The obligation of the testator to pay these expenses and to provide for the plaintiff in a manner worthy of his daughter was to continue only so long as the plaintiff maintained the relationship of a daughter and conducted herself as a dutiful and loving daughter and gave him such care. Whenever this relationship should terminate, whether by mutual consent,

by death or by breach, the obligations of the parties would end.

The undisputed evidence shows that on September 29, 1925, eight days after the agreement had been entered into, an interlocutory judgment was filed in the Superior Court in the county of San Diego, in which it was decreed that the plaintiff's husband was entitled to a divorce against her, and that a final judgment or decree should be entered at the expiration of one year. The plaintiff was informed of the entry of this decree before October 2, 1925, the date she and the defendant's testator went through the ceremony of marriage at Houston, and eleven days after the contract in question was executed. This purported marriage and their subsequent living together as husband and wife were wholly inconsistent with the relationship provided for in the contract of September 21, 1925. Although the purported marriage was unlawful, it is plain that the plaintiff and the defendant's testator entered into it voluntarily, and that any rights she previously had under the agreement were abandoned by the parties. The relationship of the plaintiff and the defendant's testator, who continued to live together as husband and wife after October 2, 1925, until he left her on November 8, 1925, was unlawful. The agreement was intended to establish the relationship of father and daughter, otherwise such recitals would have been wholly unnecessary and meaningless.

It is argued by the plaintiff that the contract was one which involved merely the plaintiff's services as a nurse and companion and that the marriage ceremony between the parties at Houston is not a bar to recovery in this action. This contention loses sight of the fact that the agreement provides not only that she should become a member of his family, but that she should conduct herself "as a dutiful and loving daughter" and render to him "the loving care of a daughter." When she went through a marriage ceremony with him and thereafter they lived together until November 8, 1925, they mutually terminated as matter of law the relationship contemplated by the contract. The changed relation between the parties on and after October 2, 1925,

was wholly inconsistent with that of father and daughter and rendered the performance of the agreement impossible, and, as matter of law, it was terminated and both parties were discharged from further obligations thereunder.

It further appears that after the defendant's testator separated from the plaintiff she applied for alimony in a French court, thereby relying upon a valid marriage with him. On July 21, 1926, her attorneys entered their appearance in the matter of the probate of the will of Richard S. Stearns; this must have been predicated upon her claim that she was his widow. After the present action was brought, the plaintiff, on March 5, 1928, wrote a letter to the Probate Court in which she stated, "I am his widow, Louise L. Stearns, now living in France." The letter was signed "Louise L. Stearns." It thus appears that the plaintiff claimed in the courts of France to be the wife of the defendant's testator; and after his death she claimed to be his widow.

The uncontradicted evidence shows that before the parties left Houston and after the agreement of September 21, 1925, was made, the defendant's testator executed a will which specifically revoked all prior wills including the codicil executed in San Diego in accordance with the agreement of September 21, 1925. This will specifically recites that it is made in contemplation of his marriage with the plaintiff, and that the gift therein to her was "in consideration of her care and attention heretofore given" him. It provided for an entirely different disposition of his estate so far as the plaintiff is concerned. It did not give her one fifth of his estate, but gave her a life interest in one half. She testified that she knew of the execution of this will, that she was present when the details were discussed by the testator with the lawyer, and that she made suggestions for the protection of her interests. Under such a will her bequest would be somewhat similar to what she would receive as widow if there were surviving children; while the disposition under the codicil previously executed is the exact amount that one of five children might naturally expect to receive. Accordingly the parties must have realized and understood that the con-

templated marriage would change the relation as provided in the contract of September 21, 1925.

It is plain that upon the evidence most favorable to the plaintiff the action cannot be maintained. The exception to the refusal of the trial judge to direct a verdict for the defendant must be sustained. Therefore it is unnecessary to consider any other exceptions saved by the defendant. In accordance with the report judgment is to be entered for the defendant.

*So ordered.*